968 F.2d 21
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James R. CRUCE, Defendant-Appellant.
 No. 91-3274.
 United States Court of Appeals, Tenth Circuit.
 June 11, 1992.
 
 Before McKAY and BARRETT, Circuit Judges, and BRIMMER*, District Judge.
 ORDER AND JUDGMENT**
 BARRETT, Circuit Judge.
 
 
 1
 James R. Cruce appeals following a guilty plea and sentence to four counts charging conspiracy and bank fraud in violation of 18 U.S.C. §§ 371, 1344 and 2, and false statements to an agency of the United States in violation of 18 U.S.C. § 1001. This is a companion case to United States v. Burger, --- F.2d ----, No. 91-3267, (10th Cir.1992) filed May 21, 1992. The same district court judge presided in both cases.
 
 
 2
 Pursuant to Federal Rules of Appellate Procedure, Rule 28(i), Cruce has adopted by reference the appellate brief filed by codefendant Thomas A. Burger and the amicus brief filed by the National Association of Criminal Defense Lawyers.
 
 
 3
 On January 10, 1991, Cruce and six others, including Thomas A. Burger, were charged in a twenty-five count indictment with conspiracy and various bank fraud crimes leading to the failure of Peoples Heritage Savings and Loan of Salina, Kansas (Peoples), a federally chartered and insured savings and loan. Cruce, a certified public accountant, owned 50% of Peoples' parent, Peoples Federal Bank Shares, and served on Peoples' board and as its president at all times material herein.
 
 
 4
 Prior to trial, Cruce pled guilty to Count 1, conspiracy ("[c]ommencing at least as early as 1984, the exact date being unknown to the grand jury, and continuing until the return of this indictment"), and Counts 18, 19, and 20, substantive counts relating to the misuse of a five million dollar line of credit granted to one James L. Bosler. During his plea hearing, Cruce acknowledged that: he could be sentenced to five years imprisonment for each count; he could be ordered to pay restitution; the only reason he was entering a plea of guilty to the four counts was because he was in fact guilty of the offenses charged in the four counts; there was no limitation on the information the court could consider at sentencing concerning his background, character, and conduct, provided that the information was reliable.
 
 
 5
 Cruce's presentence report related that: he would be sentenced in accordance with the Sentencing Reform Act of 1984 and amendments thereto (Appendix of Appellant, p. A 257); the "RTC [Resolution Trust Corporation] has totaled James Cruce with receiving direct benefit of $8 million through the complex schemes designed to defraud the institution and mislead federal regulators," id., p. A 274; Cruce had prepared a financial statement reflecting a negative net worth of $22,253,777.00, id., p. A 295. The report set forth a sentencing range of 151 to 188 months.
 
 
 6
 After receiving the report, Cruce filed a conditional motion to withdraw his guilty plea and for a determination that the 1987 guidelines would govern his sentence rather than the 1989 and 1990 amendments thereto, and that restitution be limited to Counts 18, 19, and 20. In denying Cruce's motion, the court found that: Cruce, by pleading guilty to a conspiracy which commenced "at least as early as 1984 ... and continu[ed] until the return of this indictment [January 10, 1991]," (Appendix of Appellant, p. A 005), had pled guilty to a crime which occurred subsequent to the effective dates of the November, 1989 and November, 1990 amendments to the guidelines; Cruce continued his participation and ownership in the joint ventures, corporations, partnerships and property, which was obtained with money illegally defrauded from Peoples, unimpeded until the issuance of the indictment; Cruce offered no evidence that he withdrew from the conspiracy in November, 1988; Cruce has not asserted his innocence but rather, is upset with the severity of the sentence which has been recommended in the presentence report; Cruce's motion to limit any restitution to Counts 18, 19, and 20 is inappropriate; 18 U.S.C. § 3664(d) allows the court to base its determination of restitution "on findings contained in the presentence report or other testimony or evidence supported by a preponderance of the evidence." (Appendix of Appellant, p. A 110).
 
 
 7
 Cruce was sentenced under the amended sentencing guidelines to fourteen years imprisonment and ordered to immediately pay eight million dollars in restitution to the RTC. Cruce subsequently moved for reconsideration and to vacate sentence and resentencing. Cruce also moved the district court to disqualify itself and recuse from further participation in the case. Cruce's motion for recusal was based on his allegation that the court had "demonstrated a personal bias or prejudice against him and in favor of the government by not making known to [him] or his counsel certain ex parte communications by representatives of the United States to the court prior to [his] sentencing on August 1, 1991." (Appendix of Appellant, p. A 211).
 
 
 8
 The court denied Cruce's motions. In so doing, the court found: no ex parte communication occurred between the court and the prosecution; the letters in question were from victims and not from the prosecution; the two letters in dispute were not used in determining Cruce's sentence; Cruce's sentence was based upon information in the presentence report, as amended and adopted by the court following two separate evidentiary hearings, and the "personal knowledge [the court] derived from presiding over the lengthy trial of," (Appendix of Appellant, p. A 245), Cruce's alleged co-conspirators. The court also found that inasmuch as its prior denial of Cruce's motion to withdraw his guilty plea was proper that his motion for reconsideration would be denied.
 
 
 9
 On appeal, Cruce contends that the district court erred in: (1) applying the 1989 and 1990 guideline amendments; (2) finding there was an alternative justification for his fourteen year sentence under the 1987 guidelines; (3) imposing a fourteen year sentence without first resolving the disputed issues of fact; (4) imposing consecutive sentences on Counts 18, 19, and 20; (5) failing to grant a hearing, recuse, or reconsider his sentence upon disclosure of the ex parte communications to the court; and (6) accepting his plea of guilty to Count 1.
 
 I.
 
 10
 Cruce contends that the district court erred in determining, in violation of the ex post facto clause, that the 1989 and 1990 amendments to the guidelines should apply to him when the offenses to which he pled guilty occurred prior to the effective date of those amendments. The government responds that the district court did not err in applying the 1989 and 1990 guideline amendments when, as here, Cruce pled guilty to a conspiracy that continued to January 10, 1991. We agree.
 
 
 11
 We rejected this same argument in Burger. Burger, like Cruce, pled guilty to a conspiracy "[c]ommencing at least as early as 1984, the exact date being unknown to the grand jury, continuing until the return of this indictment [January 10, 1991]." (Appendix of Appellant, p. A 005). In rejecting Burger's argument that his sentence under the amended guidelines violated the ex post facto clause, we held:
 
 
 12
 Inasmuch as Burger pled guilty to a conspiracy which extended over seven years and terminated after the implementation of the 1990 amendments, his sentence under the 1990 guidelines was not in violation of the ex post facto clause. See United States v. Morrison, 938 F.2d 168, 170 (10th Cir.1991) ("the guidelines apply to "straddle" crimes: continuing offenses 'in which acts comprising the crime occur both before and after the effective date of the Guidelines.' United States v. Bakker, 925 F.2d 728, 739 (4th Cir.1991))."
 
 
 13
 United States v. Burger, Sl.Op. at p. 18.
 
 II.
 
 14
 Cruce argues that the court erred in finding that there was an alternative justification for the fourteen year sentence imposed under the 1989 and 1990 amendments by way of an upward departure from a sentence imposed under the 1987 guidelines. During Cruce's sentencing, the district court found "that should the original guidelines be applicable in this case, an upward departure for an aggregated sentence of 168 months is appropriate and justified." (Appendix of Appellant, p. A 180).
 
 
 15
 We rejected this same argument in Burger, holding, "[i]nasmuch as the district court properly sentenced Burger under the 1990 guidelines ... we need not examine the propriety of the court's alternative sentence under the 1988 guidelines." United States v. Burger, Sl.Op. at p. 18.
 
 III.
 
 16
 Cruce contends that the district court erred "in imposing the fourteen-year sentence as it failed to make factual findings resolving the disputed issues of fact prior to the imposition of sentence." (Brief of Appellant at p. 32). Cruce acknowledges that he was allowed to make extensive objections to the factual findings contained in the presentence report "after receipt of the initial draft of the presentence report," id. at p. 33, and that "[t]hese objections were again detailed at sentencing." Id. Nevertheless, Cruce argues that inasmuch as the district court did not "make factual findings resolving the disputed issues of fact prior to imposition of sentence," the district court violated Fed.R.Crim.P. 32 and his sentence must be set aside and his case remanded for hearing and sentencing. In making this argument, Cruce relies on United States v. Alvarado, 909 F.2d 878 (10th Cir.1990) for the proposition that the court's noncompliance with Rule 32 requires a remand.
 
 
 17
 We rejected this same argument in Burger, holding:
 
 
 18
 We agree with Burger that Rule 32(c)(3)(D) and United States v. Alvarado ... require the district court to reduce its findings regarding disputed materials to written form and attach them to the presentence report. The district court did so herein. We do not agree with Burger that Rule 32(c)(3)(D) "[a]ccordingly ... expressly afforded the opportunity to review such findings prior to imposition of sentence."
 
 
 19
 Neither Rule 32(c)(3)(D) nor United States v. Alvarado ... require that a defendant be afforded the opportunity to review the court's findings prior to the imposition of sentence. The district court complies with Rule 32(c)(3)(D), when, "as to each matter controverted [it] make[s] a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing" and performs the "ministerial task of appending its determinations regarding disputed matters in the presentence report." United States v. Jackson, 950 F.2d at 638 [10th Cir.1991].
 
 
 20
 United States v. Burger, Sl.Op. at p. 16.
 
 IV.
 
 21
 Cruce argues that the district court erred in imposing consecutive sentences on Counts 18, 19, and 20 as the offenses alleged in those counts constituted but one violation of the bank fraud statute. We considered and rejected this same argument in Burger:
 
 
 22
 On appeal, Burger argues, as he argued to the district court, that the sentences on the non-conspiracy counts must be vacated because they constituted multiple sentences for the same crime. We disagree. We adopt the district court's findings:
 
 
 23
 The court further finds that defendants' arguments that the Indictment violates the double jeopardy clause, and thus, should be dismissed is without merit. The crimes charged in this Indictment involve bank fraud, [and] under the relevant statute, 18 U.S.C. § 1344, an offense occurs upon each execution or attempted execution of a scheme to defraud. United States v. Poliak, 823 F.2d 371, 372 (9th Cir.1987), cert. denied, 485 U.S. 1029 (1988). Thus, each count of the Indictment involving a draw upon a line of credit would constitute a separate execution of the scheme and would be punishable as a separate crime. The court further notes that this argument is untimely because it was first raised in defendants' motions for reconsideration. Fed.R.Crim.P. 12(f).
 
 
 24
 United States v. Burger, Sl.Op. at p. 17.
 
 V.
 
 25
 Cruce contends that the district court erred in failing to grant a hearing, recuse itself, or reconsider the sentence imposed upon disclosure of the prejudicial ex parte communications to it prior to imposition of his sentence.
 
 
 26
 Cruce argues that subsequent to the imposition of his sentence, he learned through newspaper stories that Chairman Seidman of the Federal Deposit Insurance Corporation (FDIC) and the Deputy General Counsel in charge of criminal restitution for the FDIC and the RTC had written letters to the sentencing court which were not disclosed to his counsel prior to sentencing.
 
 
 27
 Chairman Seidman related in his letter that he was "concerned that the sentence imposed upon Mr. Cruce reflect the seriousness of his crime and serve to deter others from committing similar acts." (Appendix of Appellant at p. A 338). Chairman Seidman also stated that "[a]s a result of his [Cruce's] activities, Peoples suffered losses exceeding $149 million." Id.
 
 
 28
 The Deputy General Counsel related in his letter that the court should impose upon Cruce a substantial prison sentence and order restitution in an amount of not less than $8 million. (Appendix of Appellant at p. A 322). The Deputy General Counsel also related that Cruce received large cash kickbacks; part of the money paid to Cruce was laundered through a Las Vegas casino and returned to Cruce in a brown paper bag; one of Peoples' lenders provided Cruce and Burger with the use of an airplane, cars, and "limo" drivers who provided prostitutes; Cruce "assisted in the theft of millions of dollars from the institution [Peoples] and the dissipation of hundreds of millions of dollars on bad loans." (Appendix of Appellant, p. A 335).
 
 
 29
 In denying Cruce's motions, the district court stated that the probation office had "promoted" the idea that Cruce pay eight million dollars in restitution, (Appendix of Appellant, p. A 241); the two letters in dispute were not used in determining Cruce's sentence, id., p. 244; and Cruce's sentence was based upon information contained in the presentence report and the personal knowledge the court derived from presiding over the lengthy trial of Cruce's alleged co-conspirators.
 
 
 30
 We agree with Cruce that he "at least had a right to confront the allegations [in the letters] and challenge their accuracy." (Brief of Appellant, p. 40). In granting similar relief in Burger, we held:
 
 
 31
 Under Rule 32, "it is clear that the defendant and the government enjoy equal procedural entitlements." Burns v. United States, --- U.S. ----, 111 S.Ct. 2182, 2185 n. 4 (1991). In holding that a defendant was entitled to notice that a district court was contemplating departing upward from the guideline sentencing range based on a ground not previously identified for upward departure, the Court opined:
 
 
 32
 As amended by the Sentencing Reform Act, Federal Rule of Criminal Procedure 32 provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guideline sentence. Rule 32 frames these issues by directing the probation officer to prepare a presentence report addressing all the matters germane to defendant's sentence ... Rule 32(a)(1) provides that '[a]t the sentencing hearing, the court [must] afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and other matters relating to the appropriate sentence.'
 
 
 33
 ... Rule 32 contemplates full adversary testing of the issues relevant to a Guidelines sentence and mandates that the parties be given 'an opportunity to comment upon the probation officer's determination....'
 
 
 34
 111 S.Ct. at pp. 2185-6.
 
 
 35
 No less a standard should be applied to the letters from Chairman Seidman and the FDIC. We hold that Burger is entitled to a resentencing during the course of which he shall have the opportunity to "comment upon [the letters in question and] the probation officer's determination and other matters relating to the appropriate sentence."
 
 
 36
 United States v. Burger, Sl.Op. at pp. 14-15.
 
 VI.
 
 37
 Cruce contends that the district court erred in accepting his plea of guilty to Count 1 and in denying his motion to withdraw his plea of guilty.
 
 
 38
 Cruce argues that the court erred in accepting his guilty plea to Count 1 because he specified that his participation in the conspiracy continued only through 1987. Contrary to Cruce's appellate contentions that his plea should be vacated because his participation in the conspiracy continued only through 1987, Cruce pled guilty to a conspiracy which commenced "at least as early as 1984" and continued "until the return of this indictment [January 10, 1991]." A review of Cruce's plea hearing (Appendix of Appellant, pp. A 063-A 094) and his sentencing hearing (Appendix of Appellant, pp. A 118-A 210) clearly establishes that Cruce entered a voluntary and knowing plea.
 
 
 39
 Moreover, the district court specifically found that Cruce offered no evidence that he withdrew from the conspiracy and that he continued his ownership and participation in the joint ventures, corporations, partnerships and property which was obtained with money illegally defrauded from Peoples unimpeded until the return of the indictment. Under these circumstances, we hold that the district court did not err in accepting his guilty plea to Count 1.
 
 
 40
 Cruce argues alternatively that the district court and the parties "were required to permit [him] to withdraw his plea of guilty" (Brief of Appellant, p. 41) when it became apparent that the district court intended to sentence him based on the "boiler plate language in the indictment alleging that the conspiracy continued until the return of this indictment." (Brief of Appellant, p. 41). We hold that the district court was not "required" to permit Cruce to withdraw his guilty plea:
 
 
 41
 A district court's denial of a motion to withdraw a plea of guilty is reviewed for an abuse of discretion. United States v. Rhodes, 913 F.2d 839, 845 (10th Cir.1990), cert. denied, --- U.S. ---- (1991). Although "[o]ne who enters a guilty plea has no right to withdraw it," United States v. Hickok, 907 F.2d 983, 985 (10th Cir.1990), quoting, Barker v. United States, 579 F.2d 1219, 1223 (10th Cir.1978), a district court may permit withdrawal of a plea prior to sentencing "upon a showing by the defendant of any fair and just reason." Fed.R.Crim. P. 32(d). The defendant bears the burden of demonstrating a "fair and just reason." United States v. Hickok, supra.
 
 
 42
 United States v. Burger, Sl.Op., p. 9.
 
 
 43
 We hold that Cruce has failed to show a "fair and just reason" for withdrawing his plea. Cruce entered a voluntary and knowing plea upon the advice of counsel and after careful and extensive questioning by the district as to the nature and consequences of his plea. We reject Cruce's arguments that he was somehow "sandbagged" by "boiler plate language" in the indictment setting forth the time frame of the conspiracy.
 
 
 44
 The judgment of conviction is AFFIRMED. The case is REMANDED, however, for resentencing consistent with this opinion.
 
 
 
 *
 The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3